## 64314. RYBACK v. COBB COUNTY DEPARTMENT OF FAMILY & CHILDREN SERVICES.

DEEN, Presiding Judge.

It has been the rule from earliest times in this state that in contests for the custody of a minor child appellate courts will not, in the absence of an abuse of discretion on the part of the trial court, interfere in the award of custody. *Payne v. Payne,* 39 Ga. 174 (1869); *Westmoreland v. Westmoreland,* 243 Ga. 77 (252 SE2d 496); *Brock v. Little,* 241 Ga. 549 (246 SE2d 668). The same rule is applied to issues regarding visitation rights. *Williamson v. Brazell,* 236 Ga. 798 (225 SE2d 304); *Edwards v. Edwards,* 237 Ga. 779 (229 SE2d 632) (1976).

This tragic case involves the refusal of visitation rights to the grandparents of the minor child of their daughter. The families lived in a northern state. The natural mother so abused the child that the appellant grandmother took physical custody of her at the age of four months and kept her until the age of slightly over two years, at which time the mother gained a legal battle for her return in that state. The mother and daughter then came to Georgia where authorities here were alerted to further acts of child abuse and the mother was again, this time permanently, relieved of custody. Meanwhile, the petitioner grandmother succeeded in tracing the child and after unsuccessful attempts to see her brought a petition for the grant of visitation privileges under Code Ann. § 74-112. The provisions of this statute granting visitation rights to grandparents are retroactive. *Houston v. Houston,* 156 Ga. App. 47 (274 SE2d 91). The statute as amended allows the trial court in his discretion to grant or deny visitation rights to such grandparents, and allows petitions for change or modification of the order by the use of the same discretion but not oftener than once in any two-year period.

The child is now about six years old. She has been shown pictures of the home where she lived with her grandparents during

her first two years, and of them, and is totally unable to remember anything about them. However, she has after being turned over to the appellee Department (that is, after August, 1979 until approximately April, 1981) been placed in a number of foster homes until moved to the home of potential adoptive parents in April, 1981. In the interim, according to the therapist and the psychologist having her in primary care for evaluation, she became almost psychotic when threatened with change. She showed great fear of the mother. After seeing her or when informed that her mother would visit she lost bladder control, had nightmares, screamed, ceased talking, appeared to go into a trance-like state, and like behavior, and the same results obtained when she was forced to change foster homes. In April, 1981 she was moved to the home of potential adoptive parents and after a few days showed great improvement with marked cessation of symptoms. According to the testimony of the therapist: "It's like she had closed the door on every thing prior to entering this home, she lives in the day-to-day, she plays. But when attempts are made to reacquaint her with her past she begins to show very disturbed behavior." The psychologist also emphasized that the child became very upset at any suggestion of a contact with the mother, for which reason he recommended against present contact with the grandparents; he found the child emotionally extremely fragile and doubted "how many times this kid can go up and down the roller coaster" without permanent psychotic effects.

Thus the medical and professional opinion evidence was unusually strong and definite in warning of the danger of further contacts with the child at this time outside what has become her normal day to day living environment. In view of this evidence there was little the trial court could do but deny the grandmother's petition for visitation rights in an effort to assure time in which to repair the ravages of early environmental trauma. In the latter regard the court (and his conclusions are well supported by the record) indicated that the damage was in no way the fault of the petitioner, but the right was refused "on the basis that to do so would disturb the present stability of [the child] and would probably result in severe emotional trauma." The decision was thus based entirely on the best interest of the child, the proper yardstick in such cases. *Dorminy v. Dorminy,* 242 Ga. 326 (249 SE2d 49) (1978). If the standards or principles applicable to divesting of visitation rights of a grandparent were "fitness or unfitness" of a grandparent then the court decision probably could have been different; however, this rule does not obtain except between parent and a third party seeking termination of parental rights. It was supported by the evidence. No abuse of discretion appears.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED JULY 16, 1982.

*Richard L. Powell,* for appellant.
*Robert J. Grayson, H. Perry Michael, Senior Assistant Attorney General, Vivian D. Egan, Carol Atha Cosgrove, Assistant Attorneys General,* for appellee.